IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LARRY CHATMAN,

    Petitioner,                    No. CIV-S-10-0264 FCD KJN (TEMP) P

  vs.

M.S. EVANS, Warden,

    Respondent.                  <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

        Petitioner is a state prison inmate proceeding without counsel with a petition for a writ of habeas corpus challenging his convictions in Solano County for attempted murder, mayhem and assault with a deadly weapon, with enhancements for weapons use and great bodily injury. He alleges that trial counsel, counsel appointed to represent him on a motion for a new trial, and appellate counsel were all ineffective. Respondent has filed a motion to dismiss on the ground that the instant petition is untimely.

        For the reasons set forth below, the undersigned recommends that defendant's motion be granted.

////

////

////

1

I. Statutory Tolling

The Antiterrorism and Effective Death Penalty Act ("AEDPA")contains a statute of limitations for filing a federal habeas petition:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)

Generally, the judgment becomes final for statute of limitations purposes ninety days after the state's highest court affirms a defendant's conviction. Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir. 1999). If a defendant does not seek review from the state's highest court, the conviction becomes final at the expiration of the time for seeking such review. Espinoza-Matthews v. California, 432 F.3d 1021, 1025 (9th Cir. 2005).

In this case, petitioner pursued a direct appeal in the Court of Appeal for the First Appellate District, which affirmed his conviction on January 23, 2007. (Opposition ("Opp'n."), Ex. 10.) Appellate counsel did not file a petition for review with the California Supreme Court; petitioner's attempt to file his own petition was rejected because it was not timely. (Petition ("Petn."), Ex. J.) Accordingly, petitioner's conviction was final on March 5, 2007, forty days

after the Court of Appeal's decision. Former Cal. R. Court 24(b)(1), 28(e)(4). Therefore, the statute of limitations began to run on March 6, 2007, and expired on March 6, 2008. See Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001) (applying Fed. R.Civ.P. 6(a) to computation).

The statute of limitations is tolled during the pendency of any "properly filed" state collateral attack on the judgment. Nino v. Galaza, 183 F.3d 1003, 1006-07 (9th Cir. 1999). However, a state petition filed after the limitations period has run will neither revive nor toll the statute of limitations. Jimenez v. Rice, 276 F.3d 478, 481 (9th Cir. 2001). Petitioner filed a petition in Solano County Superior Court on April 28, 2009, and a petition in the California Supreme Court on June 14, 2009. (Petn, Ex. I; Motion to Dismiss ("MTD"), Ex. A.) The former petition was denied on May 20, 2009; the latter, on October 28, 2009. (Petn., Exs. 8 & 9.) As neither of those petitions tolled the statute of limitations, the instant petition, filed in the Northern District of California on January 21, 2010, is not timely.

Petitioner suggests that he is entitled to rely on section 2244(d)(1)(D) and that, based on this section, the statute of limitations did not begin to run until January 2009. He argues that trial counsel told him she would not call him as a witness in support of his claim of self-defense because he was "too emotional" and would not make a good witness. (Declaration of Larry A. Chatman, Petn., Ex. 4 ¶¶ 3-4.) Petitioner then recounts that in 2009, when his estranged common-law wife finally accepted a collect call, he learned that counsel decided not to call him as a witness because he was subject to impeachment with his prior convictions. He says that had he known this fact, he would have insisted on testifying. (Petn, Ex. 4 ¶¶ 5-7, 9; see also, Declaration of Betty Owens, Petn., Ex. 7 ¶¶ 4-6.)

Section 2244(d)(1)(D) provides a later triggering date for the statute of limitations when a petitioner, acting with diligence, discovers the factual predicate of a claim which he could not have discovered during the original limitations period. The diligence required under this section is not "the maximum feasible diligence" but rather "reasonable diligence in the

1 circumstances," including physical confinement, which "can limit a litigant's ability to exercise
2 due diligence." Schlueter v. Varner, 384 F.3d 69, 74, 75 (3rd Cir. 2004) (internal quotations
3 omitted).

4       Respondent argues that petitioner cannot avail himself of section 2244(d)(1)(D)
5 because petitioner was aware of counsel's reasons for advising him not to testify in 2004 while
6 the case was still in trial court.  (Reply at 5.)  Respondent has provided two pleadings which
7 petitioner filed in the trial court in 2004 in which he complains of counsel's advice that he not
8 testify, based in part on the fact that he would be impeached by his prior convictions.  (Reply,
9 Docket No. 20-2 at 5;[1] Docket No. 20-3 at 14.)  Accordingly, respondent is correct and petitioner
10 cannot rely on January 2009 as a triggering date for the statute of limitations.

11 II. Equitable Tolling

12       Petitioner alleges that he is entitled to equitable tolling because he relied on an
13 inmate writ-writer who took twenty five dollars but did nothing to prepare a habeas petition and
14 because of his alleged mental illness and intellectual deficits.

15       In Holland v. Florida, 130 S.Ct. 2549, 2560, 2562, 2564 (2010), the Supreme
16 Court recognized that the AEDPA statute of limitations "may be tolled for equitable reasons"
17 when the petitioner has made a showing of "extraordinary circumstances."  To be entitled to
18 equitable tolling, petitioner must demonstrate "(1) that he has been pursuing his rights diligently,
19 and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S.
20 408, 418 (2005).  The Ninth Circuit has explained:

> To apply the doctrine in "extraordinary circumstances" necessarily
> suggests the doctrine's rarity, and the requirement that
> extraordinary circumstances "stood in his way" suggests that an
> external force must cause the untimeliness, rather than, as we have
> said, merely "oversight, miscalculation or negligence on [the

---

[1] Because of the somewhat confusing pagination of the exhibits submitted with respondent's reply, the court relies on the docket and page numbers assigned by its electronic case filing system.

4

>petitioner's] part, all of which would preclude the application of equitable tolling.

Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1011 (9th Cir.) (internal citation omitted), cert. denied, 130 S.Ct. 244 (2009). It is petitioner's burden to show he is entitled to equitable tolling. Espinoza-Matthews v. People of the State of California, 432 F.3d 1021, 1026 (9th Cir. 2005).

A. Alleged Reliance On A Writ-Writer

Petitioner avers that in January 2008 inmate Edward Turner agreed to prepare a state writ for petitioner for $25.00, that he had his nephew mail a money order to Turner, but that Turner refused to prepare the writ unless petitioner provided an additional $200.00. (Opp'n., Ex. A (Declaration of Larry Chatman) at 22-23 & Ex. H at 114-15.)

Several courts have rejected claims of equitable tolling based on difficulties with writ writers. In Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000), the Tenth Circuit Court of Appeals rejected an inmate's claim that he was entitled to equitable tolling for the period of time the writ writer was preparing the petition. The Court held that "the fact that an inmate law clerk was drafting the state petition does not relieve Mr. Marsh from the personal responsibility of complying with the law." In United States v. Cicero, 214 F.3d 199, 204 (D.C.Cir. 2000), the movant had relied on a writ writer whose placement in segregation "separated [petitioner] and his papers for some time before the expiration of the one year grace period until after the filing deadline had passed." The court found this assertion an insufficient basis for equitable tolling, because movant "entrusted [the writ-writer] with his legal documents at his peril." Id. at 205; see also Henderson v. Johnson, 1 F.Supp.2d 650, 655 (N.D.Tex.1998) (reliance on writ-writer who misled petitioner did not make it impossible for petitioner to file).

In this case, there is no allegation that petitioner did anything but provide the writ writer with some money, which Turner simply pocketed. Petitioner has made no claim that the writ writer withheld petitioner's files or records and nothing even suggesting that petitioner's contact with Mr. Turner made it impossible for petitioner himself to file a timely petition.

B.  Alleged Mental Illness And Intellectual Capacity

The Ninth Circuit has held that mental incompetency may equitably toll the limitations period applicable to § 2254 actions because mental incompetency is an extraordinary circumstance beyond a prisoner's control. Laws v. Lamarque, 351 F.3d 919, 923 (9th Cir. 2003); see also Lawrence v. Florida, 549 U.S. 327, 337 (2007) ("even assuming this argument could be legally credited, Lawrence has made no showing of mental incapacity"). In determining whether mental incompetency exists, the court engages in a "highly fact dependent" evaluation of the record. Laws, at 922 (citing Whalem/Hunt v. Early, 233 F.3d 1146, 1148 (9th Cir. 2000)). In order for mental incompetence to serve as a basis for tolling of the limitations period it must have been the actual cause of the untimeliness of the habeas petition. Gaston v. Palmer, 417 F.3d 1030, 1034 (9th Cir. 2005), as amended, 447 F.3d 1165 (9th Cir. 2006) (analyzing whether causal connection between mental deficiencies and late filing existed in light of specific facts of case), cert. denied, 549 U.S. 1124 (2007). It is petitioner's burden to show equitable tolling is available. Gaston, 417 F.3d at 1034.

Although the Supreme Court has not defined the level of mental incapacity or mental incompetency which will support a claim of equitable tolling, the Ninth Circuit has addressed the issue in a recent case. In Bills v. Clark, 2010 WL 4968692 (9th Cir. 2010), the court reviewed a district court's finding that the habeas petitioner's mental state did not entitle him to equitable tolling. In formulating its test, the court reviewed the law on mental incompetency in the criminal context, examined the tests for competence to stand trial, plead guilty and represent oneself, and concluded that "the 'competency' standard does not exist in a vacuum – it varies in relation to the task the defendant is expected to perform." Id. at 7. The court devised a two part test:

> (1) *First*, a petitioner must show his mental impairment was an "extraordinary circumstance beyond his control, by demonstrating the impairment was so severe that either
>
> (a) petitioner was unable rationally or factually to

            personally understand the need to timely file, or

            (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.

            (2) *Second*, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.

Id. (citations & footnote omitted).

        Petitioner avers that during the state appellate process he was diagnosed with "psychotic dysfunction; paranoid schizophrenia, bipolar and depression, and was taking on a daily basis anti-psychotic medications: Olanzapine, Ziprasidone, and Trazodine, to help control my disorder. I was also assigned to adult basic education (ABE) because of my learning disability." (Petn., Ex. 4 ¶ 10.) He further alleges that because of the combination of mental condition, medication and learning problems, "I was unable to comply with the requirements of the AEDPA; the State writ was prepared by Mr. Moreland, and the instant petition was prepared by Robert McCullam (CDCR No. E78680)." Id. ¶ 11.

        Medication records submitted with the petition show that petitioner was in fact prescribed a variety of medications both during and after the statute of limitations had run. (Petn, Ex. 11 at 53-60.) Petitioner has not explained the purpose of the medications or described their effect on him.

        Petitioner has also provided some of the prison's mental health records. Mental health treatment chronos from 2007 and 2008 show that petitioner was placed in Clinical Case Management, although he provides no description of what this means in terms of his mental health. These chronos show that petitioner was not taking psychotropic medications in 2007, but this circumstance had changed by December 2008. (Petn. Ex. 11 at 61.)

        A series of interdisciplinary progress notes beginning in April 2008 provide some information about petitioner's mental state. In April, petitioner reported that it made him

1   paranoid to be around people, which would make school difficult. (Petn., Ex. 11 at 69.) The
2   clinician described petitioner as distressed, shaking and dysphoric. (Id.; see also Opp'n., Ex. C at
3   45.)
4           In June 2008 the clinician did not detect any suicidal thoughts and determined that
5   petitioner was doing well on his medication. (Petn, Ex. 11 at 67.)
6           Progress notes from July 2008 described petitioner as stable on his medication,
7   although he reported that it was not helping. (Petn., Ex. 11 at 65; Opp'n., Ex. C. at 52.)
8           In August 2008, petitioner reported "I feel fine, no problems" and declined to
9   continue with medication. (Petn., Ex. 11 at 64.)
10          Progress notes from September 2008 report petitioner's opinion that he did not
11  need his medication, that his sleep patterns and appetite were all right, and that he missed his
12  family. (Petn., Ex. 11 at 63.)
13          A note from December 2008 reflects that petitioner described his state as "so-so,"
14  reported that he did not like school, that he did not want his medication anymore, that he was not
15  suicidal, and that he was depressed because he was away from his family. (Petn., Ex. 11 at 62;
16  Opp'n., Ex. C at 55.)
17          Petitioner has submitted a variety of other records and a new declaration with his
18  opposition to the motion to dismiss. In this second declaration, petitioner avers that he has a
19  "below normal IQ of 69" and that he was mentally incompetent because of his mental disorder
20  and the medications he took to control it. (Opp'n., Ex. A at 21; Id. at 52.) Additional medication
21  records show that petitioner was prescribed Zoloft and Trazadone in March 2007. (Opp'n., Ex.
22  D at 58-59.)
23          In addition to these records from CDCR, petitioner's opposition includes a
24  psychological evaluation prepared in 2005 in connection with his motion for a new trial. This
25  report, from Carlton Purviance, Ph.D., includes a psychiatric history of petitioner. (Opp'n., Ex
26  E.) This report includes summaries of several evaluations. A 1990 disability evaluation reported

petitioner's "extreme paranoia," hospitalization at an unspecified date in Contra Costa County Hospital, visual hallucinations and a diagnosis of alcohol and poly-substance abuse, paranoid personality order, and organic mental disorder. (Id. at 63.) A 1996 evaluation reported that petitioner appeared to be delusional and psychotic, with "subnormal intellectual function (IQ=69)." He was deemed unable to manage his own money. (Id.) Finally, petitioner was evaluated in 2004 at Solano County Jail following the arrest for the underlying conviction. The evaluator reported that petitioner's auditory hallucinations were coming back and that he was hearing demons and the devil. (Id.) These symptoms were brought under some control with medication. (Id.)

Dr. Purviance's own diagnostic impressions were Psychotic Disorder NOS, alcohol induced persisting dementia, alcohol abuse disorder, history of poly-substance abuse disorder and anti-social personality disorder. (Id. at 66 & Ex. F at 89.) At the hearing on the motion for a new trial, Dr. Purviance testified that one of petitioner's relatives said that even a small amount of alcohol could provoke "a very pronounced psychiatric effect in the defendant." (Opp'n., Ex. F at 87.) He also explained that the diagnosis of alcohol induced persistent dementia means that "when you drink enough for a long period of time, you begin to get some brain damage and loss of cognitive function." (Id. at 91.) He acknowledged, however, that petitioner told him that since he was "back in the Bible," the voices did not trouble him very much. (Id. at 104.)

Dr. Purivance said that petitioner was receiving disability payments as the result of his schizophrenia and paranoia and was deemed not capable of handling his own money, but was not asked and did not describe what impact petitioner's mental problems might have on his understanding of his need to file or his ability to prepare a habeas petition in a timely fashion.

Petitioner has not borne his burden of showing that his mental condition rendered him unable to understand the need to file a habeas petition in a timely fashion or rendered him unable to prepare a petition himself. In fact, his allegations discussed above concerning

attempting to hire a writ-writer demonstrate that petitioner was aware of the need to file a habeas petition in a timely manner. The records show that it would be difficult for him to prepare a petition, but do not show he was unable to prepare a rudimentary petition during the limitations period. He has not presented any mental health records, apart from a few medication records, for the period between March 2007 and March 2008 when the statute of limitations was running. It is true that petitioner had been diagnosed with limited intellectual functioning and with a variety of mental illnesses beginning in 1990, illnesses which followed him to CDCR. It is also true, however, that petitioner's cousin attributed the most acute of petitioner's symptoms to his abuse of alcohol, the access to which is curtailed by petitioner's custodial state. Moreover, even during the pendency of trial proceedings, petitioner filed a civil action in this court, complaining about defense counsel's representation. (Reply, Docket No. 20-1 at 21.) Finally, the progress notes for a period right after the statute of limitations had run indicates that petitioner had one episode of paranoid feelings but was generally free of psychosis and hallucinations. This record does not support petitioner's claim that his mental condition rendered him unable to file his federal habeas petition in a timely fashion: right after the limitations period there was no evidence of psychosis, and even during trial petitioner pursued legal remedies for the problems he perceived with counsel's representation.

        Second, petitioner has made an insufficient showing of diligence. His declaration shows that sometime in 2007 he found an inmate to prepare a filing for the California Supreme Court, which that court rejected as untimely. (Opp'n., Ex. A at 22 & Ex. J.) He claims that he "attempted to find someone to prepare a habeas petition for me, but because of my mental disorder and excursive mannerism from the effects of anti-psychotic medication, I was considered an abomination and treated as an outcast." (Opp'n., Ex. A at 22.) He says nothing, however, about the inmate who assisted him with the documents he filed in the California Supreme Court or about any efforts of his own to understand and prepare a habeas petition. He describes his contact with Inmate Turner, but does not suggest what steps he took to find

additional assistance or to file the petition himself after Turner refused to prepare the petition. He has not satisfied either prong of the <u>Bills</u> test.

Accordingly, IT IS HEREBY RECOMMENDED that respondent's motion to dismiss (docket no. 12) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3). Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 11, 2011

_Kendall J. Newman_
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

chat0264.157