1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    LARRY A. CHATMAN,                          No.  2:10-cv-00264 KJM CKD P

12                     Petitioner,

13         v.                                    ORDER AND SUPERSEDING

14    RICK HILL,                                 FINDINGS AND RECOMMENDATIONS

15                     Respondent.[1]

16

17         Petitioner is a California state inmate proceeding through counsel with a federal habeas

18    corpus petition filed pursuant to 28 U.S.C. § 2254 challenging his 2005 convictions for attempted

19    premeditated murder, assault with a deadly weapon, and mayhem.   Petitioner filed a second

20    amended § 2254 petition on July 14, 2015, and respondent filed an answer on October 5, 2016

21    after years of litigation concerning the timeliness of petitioner's claims for relief in his original as

22    well as amended federal habeas petitions.  Petitioner's traverse was filed on February 3, 2017,

23    rendering this case fully briefed.

24         On April 2, 2018, the undersigned issued Findings and Recommendations that petitioner

25    be granted relief on his first ineffective assistance of counsel claim.  ECF No. 99.  The briefing

26    schedule for objections was stayed and the parties were ordered to attend a settlement conference.

27    _____

      [1] Rick Hill, the Acting Warden of Folsom State Prison, is hereby substituted as respondent in this
28    matter on the court's own motion pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

1 Id. The case was not settled and the parties requested a ruling with respect to the remaining three

2 claims in the second amended habeas petition. ECF No. 109.

3      For the reasons discussed below, the undersigned recommends granting petitioner habeas

4 corpus relief based on trial counsel's failure to investigate and present evidence of petitioner's

5 mental health history to negate the intent required for attempted first-degree murder. The court

6 has reviewed the remaining three claims and finds that they do not warrant relief for the reasons

7 outlined below.

8      **I.      Factual and Procedural History**

9           **A.      Trial Proceedings**

10      In ruling on petitioner's direct appeal of his conviction and sentence, the California Court

11 of Appeal, First Appellate District, summarized the facts as follows:[2]

> Chatman and Gregory Everetts are cousins by marriage and have known each other for around forty years. On the afternoon of December 25, 2003, Chatman, his girlfriend, Betty Owens, and their son were among the guests who celebrated Christmas at Everetts's new home in Suisun City. Shortly after Chatman arrived at the house, he and Everetts went to the store to buy some pasta and a lottery ticket. After they returned, the two men went to the garage where they talked and drank brandy.
>
> Everetts testified at trial that his conversation with Chatman was friendly at first but then turned ugly. According to Everetts, Chatman complained that Everetts was bragging about having a new house. Everetts tried to assure Chatman that he could have a home, too, but Chatman became angry and started to taunt Everetts, who is 'illegitimate,' with rumors about the identity of Everetts's father. Both men became angry and raised their voices. At one point, Everetts knocked a hat off Chatman's head, pushed him and told him to go home. Then Everetts went back inside his house.
>
> Everetts testified that, when he saw people in his home having a good time together he did not want to ruin the day by calling the police or making people go home. So he decided to leave for a while, got his car keys and returned to the garage. Chatman was standing with his 'chest out mad' just inside the garage near Everetts's car, which was parked in the driveway. As Everetts walked toward his car, he came within a few feet of Chatman and said, 'Why don't you just be cool, man, you know, and go on.' Chatman planted his back foot and swung a pair of pruning sheers [*sic*] up, over and down toward Everetts's neck. Everetts brought his

---

[2] These factual findings are entitled to a presumption of correctness pursuant to 28 U.S.C. § 2254(e)(1).

hands up to his neck and the shears struck his right hand. Chatman grabbed Everetts's legs to flip him over. Everetts came down on top of Chatman who poked Everetts in the armpit with the shears. The men spilled out into the street and continued to struggle for a few minutes until people came from inside the house. Everetts testified that, as a result of the altercation with Chatman, he lost his right pinkie finger, part of his right ring finger was severed but later reattached, and an artery in his wrist was severed necessitating surgery.

During his trial testimony, Everetts maintained that all he had to drink on the Christmas day of his altercation with Chatman was one sip of an eggnog and brandy drink he had fixed for himself in the garage and that on Christmas Eve he drank only one 40 ounce bottle of beer. Everetts admitted to the jury that he had previously been convicted of petty theft and had a misdemeanor case pending against him when he testified in this case.

Everetts's wife Gloria testified that, on the afternoon of the incident, her husband and Chatman were out in the garage for about 20-30 minutes before any problems arose. Then, she heard yelling and arguing in the garage and went to investigate. Gloria said that she and the other guests found Everetts standing in the middle of the street covered in blood and 'bleeding to death.' Chatman was lying on the ground and the sheers were beside him in the street.[3] Gloria then ran to call the police and an ambulance. Gloria testified that, after the police arrived, Chatman called and she was so upset that she just handed the phone to one of the officers. Gloria admitted to the jury that she had prior convictions for selling or transporting a controlled substance, prostitution and making a false statement to the police.

Officers from the Napa Police Department who arrived at the Everetts's house shortly after the altercation, found a watch, a set of keys and a man's hat in the middle of the street outside the Everetts's home. They did not find a set of pruning sheers [*sic*] and were unable to locate Everetts's severed pinkie finger. Officer Jeffrey Hansen testified that, while he was at the Everetts's house, Gloria handed him a telephone and said that Chatman was on the line. The person on the phone was screaming and yelling and making incoherent statements. At one point the person said, with some profanity thrown in: 'I am gonna come back over there and shoot you and kill you.'

Chatman did not testify at trial but called several witnesses including Everetts's niece, Nicole Hawkins, who had attended the holiday gathering. Hawkins testified that she could hear Everetts and Chatman in the garage arguing from the kitchen where she and other guests were playing cards. During the course of the argument, Everetts went back and forth between the garage and house. At one point when Everetts came into the kitchen, Hawkins expressed a

---

[3] However, Gloria later admitted that, after the police arrived, she told them that she did not know what instrument had caused her husband's injuries. The day after the fight, Gloria contacted the police and reported she had found a pair of bloody pruning shears.

desire to go home. Everetts had promised to give her a ride and Hawkins was concerned because Everetts was intoxicated. She told him that he better stop drinking because she did not want to drive with him while he was in that condition. Everetts continued to go back and forth from garage to kitchen and became increasingly more agitated and argumentative with people in the house. When the argument between the men grew louder, Hawkins went outside and saw Everetts and Chatman fighting in the street.

Betty Owens, Chatman's girlfriend, testified that Everetts was intoxicated when she and Chatman arrived at the holiday gathering. According to Owens, while the men were in the garage, Chatman came into the house at least three times to fix himself another drink. Owens testified that, when Hawkins asked for a ride home, Everetts became angry because he did not want to go out and stormed out of the house. He returned a short time later and made some 'ugly accusations' about Owens and told her that she better 'check [her] husband.'

According to Owens, when the guests inside the house heard the argument in the garage, Gloria Everetts went to take a look. Gloria then told Owens to leave with Chatman because Everetts was becoming so loud that the neighbors would call the police. Owens and her son went outside to their car and found that Chatman had gone down the street. She called him back so they could leave. As they were attempting to get in the car, Everetts attacked Chatman causing him serious injuries. Owens testified that the altercation left both men covered in blood. During her trial testimony, Owens admitted she had two prior petty theft convictions.

During her closing argument to the jury, defense counsel argued that there was a reasonable doubt as to whether Chatman was guilty of the charged offenses because the evidence showed that he acted in self-defense. Counsel attacked the credibility of both Everetts and his wife and highlighted testimony she characterized as untruthful. She relied on evidence that Everetts was significantly larger than Chatman and that he was intoxicated and agitated throughout the holiday event. She pointed out that Betty Owens's version of the events was consistent with testimony reluctantly given by Everetts's own niece and was also consistent with physical evidence including the fact that personal items were found in the street, where Owens testified that Chatman was attacked, rather than in the garage, where Everetts testified the fight had occurred. Defense counsel also suggested that the cuts on Everetts's hand were consistent with a finding that his injuries were sustained while he attacked Chatman, who held the shears up defensively.

The jury found Chatman guilty of willful, deliberate and premeditated attempted murder (Pen. Code, §§ 187, subd. (a) & 664),[4] assault with a deadly weapon (§ 245, subd. (a)(1)), and mayhem (§ 203). The jury also found true allegations that Chatman personally inflicted great bodily injury (§ 12022.7, subd. (a)) during commission of the attempted murder and personally used a deadly

_____

[4] All further statutory references are to the Penal Code.

weapon (§ 12022, subd. (b)(1)) during commission of the mayhem offense. After a bench trial, the trial court found true allegations that Chatman suffered one prior strike conviction and one prior serious felony conviction. Chatman was sentenced to a total prison term of 23 years to life in prison.

ECF No. 64-2 at 3-5.

## B.    Post-Trial Motion on Ineffective Assistance of Counsel

Following his conviction, but prior to sentencing, petitioner was appointed a new attorney who filed a supplemental motion for a new trial based on trial counsel's failure to investigate and present evidence of petitioner's mental health history to negate the intent required for the charged offenses.[5] See ECF No. 64-2 at Appendix 29-37. A post-trial hearing was held on September 26, 2005, in which Dr. Carlton Purviance, a licensed clinical psychologist who had performed a comprehensive psychological evaluation of petitioner, testified that he suffered from a psychotic disorder not otherwise specified, paranoid schizophrenia, alcohol-induced persisting dementia, alcohol abuse disorder, polysubstance abuse disorder, and antisocial personality disorder. ECF No. 78-5 at 22. This conclusion was reached by reviewing petitioner's prior psychiatric records and interviewing petitioner's family members. ECF No. 78-2 at 18-19 (listing all the records reviewed and interviews conducted as part of the psychological evaluation).

The relevant records dated back to 1990 and described petitioner as "so paranoid and suspicious that he could not attend to a comprehensive psychometric examination." ECF No. 78-2 at 19. This led to petitioner's involuntary commitment to the psychiatric ward at Contra Costa County Hospital. Id. at 20. He was treated for "questionable auditory hallucinations… [and] the possibility of visual hallucinosis." Id. In a 1996 evaluation, petitioner "appeared to be both

---

[5] The court notes that the California Court of Appeal decision makes no reference to this hearing in the "Statement of Facts" section. Accordingly, there are no explicit state court factual findings that are entitled to a presumption of correctness. See 28 U.S.C. § 2254(e)(1). The Ninth Circuit has questioned whether AEDPA deference extends to implicit factual findings noting that "the state could always point to some 'implicit' finding by the state court to fill in a whole variety of constitutional defects." Goldyn v. Hayes, 444 F.3d 1062, 1065, n. 5 (9th Cir. 2006). Ultimately, the Court of Appeal left the issue an open question. Id. To the extent that the California Court of Appeal made an "implicit" factual finding that petitioner failed to present "affirmative evidence" of trial counsel's failure to conduct any investigation into his mental health history, the court finds any presumption of correctness that attaches to this finding to be rebutted by a close inspection of the post-trial hearing transcript. See ECF No. 64-2 at 7.

delusional and psychotic" and "reported auditory hallucinations." Id. Formal psychometric testing was conducted and revealed that petitioner had "a subnormal intellectual function (IQ=69)." Id.

While in custody in 2004 for the offenses that are the subject of these proceedings, petitioner was evaluated by Dr. Minn based on reports that petitioner was experiencing auditory hallucinations and that he did not remember "going through a jury trial." ECF No. 78-2 at 19, 20. Petitioner indicated that he was "hearing demons and the devil" and that "[t]hey say I kill[ed] my cousin." Id. at 20. He was placed on anti-psychotic medications as a result, but they were discontinued in August 2004 at petitioner's request. Id.

Petitioner's family members who were interviewed by Dr. Purviance provided additional details of petitioner's mental health history. ECF No. 78-2 at 22. When he was around 19 years old, petitioner "cut off his hair, grabbed a Bible, and began wandering the streets claiming he was Jesus Christ." Id. This prompted his first psychiatric evaluation. Id. Petitioner's cousin, who was also his designated payee for Social Security disability payments, described the relationship between petitioner's long history of alcohol use and his mental state. Id. "[A]s time went on even small amounts of alcohol would have highly exaggerated effects on [petitioner.] Now alcohol makes him crazy…." Id.

At the post-trial hearing, Dr. Purviance testified that petitioner had used alcohol for such a long period of time that he sustained "brain damage and loss of cognitive function" as a result. ECF No. 78-5 at 24. When interviewed by Dr. Purviance in August 2005, petitioner once again reported experiencing auditory hallucinations. ECF No. 78-2 at 22. "I hear a bunch of conversations. It's most of the time because of the Bible. It's mostly God. It's because there are demons and devils around, and I know that." Id.

A respected criminal defense attorney, Dennis Healy, also testified at the post-trial hearing after having reviewed petitioner's psychological history, the police reports in the case, the preliminary hearing and trial transcripts, as well as trial counsel's file which consisted of about 26 or 27 pages of notes. ECF No. 78-5 at 45-47. Based on his review of the file, "[t]here's no discussion of any sort of background… or clinical history at all in terms of the witnesses" who

6

were interviewed by trial counsel.  ECF No. 78-5 at 50, 59.  Mr. Healy explained that petitioner's

psychiatric and psychological history could easily have been discovered by trial counsel "within

20 minutes and a couple of phone calls."  ECF No. 78-5 at 48.  If this information had been

properly investigated, Mr. Healy opined that it would have supported a secondary defense based

on lack of specific intent to establish attempted premeditated murder.  ECF No. 78-5 at 49-50.

This secondary defense strategy was not inconsistent with the self-defense strategy ultimately

presented at trial which Mr. Healy conceded was also a viable and reasonable defense.  ECF No.

78-5 at 61.  Ultimately, the trial court denied petitioner's motion for a new trial and proceeded to

sentencing.  See ECF No. 78-5 at 89-91 (Transcript of September 30, 2005).

## C.    California Court of Appeal

With a fully developed factual record in hand, appellate counsel raised the ineffective

assistance of trial counsel claim on direct appeal before the California Court of Appeal.  See ECF

No. 78-5 at 101-133 (Appellant's Opening Brief); see also People v. Lucas, 12 Cal.4th 415, 437

(1995) (stating that "[r]eviewing courts will reverse convictions (on direct appeal) on the ground

of inadequate counsel only if the record on appeal affirmatively discloses that counsel had no

rational tactical purpose for (his or her) act or omission.") (quoting People v. Zapien, 4 Cal.4th

929, 980 (1993)).  Appellate counsel also raised a second claim based on juror misconduct.  The

state court of appeal affirmed petitioner's convictions on January 23, 2007.  With respect to the

ineffective assistance of counsel claim, the state court denied relief finding that trial counsel's

performance was not deficient.  See ECF No. 64-2 at 3-8.

Absent from this direct appeal was petitioner's Batson challenge to the prosecutor's use of

peremptory challenges to excuse three African Americans from the jury venire.  Petitioner asserts

that this error by his appellate counsel amounts to ineffective assistance which would allow the

court to bypass the procedural default of this claim and review it on the merits.[6]  See ECF No. 64-

1 at 26.

---

[6] According to Respondent, this claim is procedurally defaulted based on an independent and state
law ground because the California Supreme Court denied it as untimely when it was raised for the
first time in state habeas proceedings.  See ECF No. 77-1 at 31-32.

7

1  **D.      California Supreme Court**

2       Petitioner's appellate counsel did not file a petition for review in the California Supreme

3  Court resulting in the subsequent procedural default of petitioner's ineffective assistance of trial

4  counsel claim in the current federal habeas proceedings.   Petitioner eventually did manage to

5  send a pro se petition for review raising unknown claims for relief, but it was returned unfiled by

6  the California Supreme Court since it was untimely.  <u>See</u> ECF No. 78-5 at 242.

7  **E.      State Habeas Petition**

8       By the time petitioner's current counsel was able to properly exhaust the ineffective

9  assistance of trial counsel claim by filing a state habeas corpus petition it was deemed untimely

10  by the California Supreme Court.  <u>See</u> ECF No. 78-5 at 242 (citing <u>In re Robbins</u>, 18 Cal. 4th 770

11  (1998), and <u>In re Clark</u>, 5 Cal. 4th 750 (1993)).

12  **F.      Federal Habeas Petition**

13       The instant federal proceedings were initiated on January 21, 2010 based on petitioner's

14  pro se filing of a habeas corpus petition pursuant to 28 U.S.C. § 2254.[7]  <u>See</u> ECF No. 1.  This

15  petition alleged that petitioner's trial counsel was ineffective for pursuing a self-defense strategy

16  at trial while not allowing petitioner to testify, which is currently claim two.  ECF No. 1 at 9.

17  Petitioner also contended that appellate counsel was ineffective for failing to raise this issue on

18  direct appeal.  <u>Id.</u>  Respondent filed a motion to dismiss the petition arguing that it was barred by

19  the one year statute of limitations.  ECF No. 12.

20       While the motion to dismiss was pending, petitioner filed a motion seeking to: 1) delete

21  his unexhausted IAC of appellate counsel claim; 2) stay his entirely exhausted federal habeas

22  petition; and, 3) file an amended § 2254 petition once his IAC of appellate counsel claim was

23  properly exhausted in state court.  ECF Nos. 21, 22.  Petitioner filed a proposed first amended

24  § 2254 petition in which he alleged for the first time that his trial counsel was ineffective for

25  failing to investigate and present his mental health history to negate the mental state required "for

26

---

27  [7] The petition was constructively filed on January 5, 2010 by applying the prison mailbox rule.
    <u>See</u> ECF No. 39 at 4; <u>see also</u> <u>Houston v. Lack</u>, 487 U.S. 266, 276 (1988) (establishing the prison

28  mailbox rule).

1    his crimes." ECF No. 22 at 4.

2          On January 12, 2011, the magistrate judge who was temporarily assigned to this case

3    issued Findings and Recommendations that respondent's motion to dismiss be granted.  ECF No.

4    25.  The same magistrate judge denied the motion to amend subject to renewal.  See ECF No. 29.

5    On April 4, 2011, the district judge declined to adopt the findings and recommendations and

6    referred the case back to the magistrate judge for consideration of additional medical records that

7    were submitted on the issue of equitably tolling the statute of limitations.  ECF No. 34.  On May

8    12, 2011, petitioner renewed his requests to amend his federal habeas petition and to stay

9    proceedings pending state court exhaustion.  ECF No. 35.

10         The undersigned was assigned the instant case on August 2, 2011 and recommended

11   granting respondent's motion to dismiss on September 14, 2011.[8]  ECF Nos. 36, 39.  In these

12   Findings and Recommendations, the undersigned concluded "that while petitioner suffered from

13   mental health problems during the relevant period, he has not carried his burden under the first

14   part of the Bills test to show that his mental illness was so severe that he was unable either to

15   understand the need to file or to personally prepare and file a habeas petition."  ECF No. 39 at 5

16   (applying Bills v. Clark, 628 F.3d 1092 (9th Cir. 2010)).  The court addressed petitioner's low

17   I.Q. separate and apart from his mental health issues and concluded that it did not justify

18   equitably tolling the statute of limitations.  ECF No. 39 at 5-6 (applying Hughes v. Idaho State

19   Bd. of Corrections, 800 F.2d 905, 909 (9th Cir. 1986)).  The undersigned viewed the evidence

20   from the 2005 post-trial hearing as "bear[ing] only indirectly on his mental condition during the

21   relevant [statute of limitations] period, which began on March 6, 2007."  ECF No. 39 at 7

22   (applying Laws v. Lamarque, 351 F.3d 919, 932 (9th Cir. 2009).  Ultimately, these

23   recommendations were adopted by the district court judge on January 19, 2012, the case was

24   closed and judgment was entered.[9]  ECF No. 45.

25   _____

26   [8] It was also recommended that petitioner's renewed motions to amend and to stay and abey the
     federal habeas proceedings be denied since the original habeas petition was determined to be
     untimely filed.  See ECF No. 39 at 8.

27   [9] After conducting a de novo review of the case, the district court judge declined to adopt "those
28   portions of the findings that rely on petitioner's own reporting of his mental status during the

## G.     Ninth Circuit Appeal and Remand

Petitioner filed a timely notice of appeal of this court's judgment on February 10, 2012. ECF No. 47.  The Ninth Circuit Court of Appeal reversed and remanded this case with instructions to allow petitioner to proceed with his habeas corpus petition despite its untimely filing in light of "his severe mental illness, combined with his mental retardation, [that] rendered him unable to timely file a petition." ECF No. 53 at 3-4.  It reached this conclusion by reviewing the "long history of mental illness" in the record including petitioner's diagnosis of "psychotic disorder, paranoid schizophrenia, alcohol-induced persisting dementia, alcohol abuse disorder, and antisocial personality disorder." Id. at 2.  The Ninth Circuit found that further proceedings concerning petitioner's diligence were also unnecessary in light of the undisputed underlying medical record in this case.  Id. at 3-4.  Petitioner "repeatedly attempted to secure the assistance of other inmates, and was able to file only after securing such assistance…." Id. at 4.  The Ninth Circuit mandate issued on January 27, 2015.  ECF No. 57.

## H.     Post-Remand District Court Proceedings

This court appointed counsel to represent petitioner following the Ninth Circuit remand. ECF No. 62.  On July 14, 2015, petitioner's counsel filed a motion to amend, a proposed second amended § 2254 petition, and a motion to stay proceedings pending the exhaustion of state court remedies.  ECF Nos. 64-66.  The second amended petition, which is the operative habeas petition being reviewed, raises four claims for relief.  ECF No. 64-1 (Memorandum in Support of Second Amended 28 U.S.C. § 2254 petition).  In his first claim for relief, petitioner asserts that his Sixth and Fourteenth Amendment rights were violated when his trial counsel rendered ineffective assistance by failing to properly investigate and present evidence of petitioner's mental health history and conditions to negate the intent element for attempted first-degree murder.  ECF No. 64-1 at 14-19.  Claim two alleges that trial counsel was also ineffective for using a self-defense strategy at trial without having petitioner testify.  ECF No. 64-1 at 20-23.  Next, petitioner raises a

---

relevant time periods as support for the conclusion that petitioner's mental health was not so severe that petitioner was unable to understand the need to file or personally to prepare and file a habeas petition."  ECF No. 45 (citing ECF No. 39 at 4: 19-21).

Batson challenge to the prosecutor's use of three peremptory challenges to remove African-American jurors. ECF No. 64-1 at 23-26. Lastly, petitioner contends that cumulative prejudicial error resulting from his other three claims for relief warrant granting him a new trial. Id. at 26-27.

On October 15, 2015, the undersigned issued Findings and Recommendations that petitioner's motions to amend and to stay federal proceedings pending state court exhaustion should be granted. ECF No. 69. In reaching this conclusion, the undersigned extended the period of equitable tolling granted by the Ninth Circuit to include the December 2010 first amended § 2254 petition which presented claim number one for the first time. ECF No. 69 at 7-8. "[T]he Ninth Circuit's order of remand indicates that the panel found petitioner "unable personally to prepare a habeas petition and effectuate its filing" largely due to factors that were not specific to the period between November 2007 and January 2010, but were longstanding conditions: an extensive history of mental illness, multiple psychological disorders, substance abuse issues, low IQ, and poor language skills." ECF No. 69 at 8. These same factors were sufficient to find good cause for a stay under Rhines v. Weber, 544 U.S. 269 (2005). ECF No. 69 at 8-10. The district court adopted the Findings and Recommendations with respect to the motion to amend, but denied the motion to stay as moot since the new claims had been exhausted in the interim. ECF No. 72 at 2. All four claims for relief were then briefed on the merits by the parties. See ECF Nos. 77 (Answer), 93 (Traverse).

In light of the allegations in petitioner's pro se filings[10] and the lengthy litigation history in this case, the undersigned ordered petitioner to supplement the record with an affidavit addressing: 1) whether he had any access to legal assistance from January 24, 2007, the day after the California Court of Appeal denied relief on his IAC of trial counsel claim, until March 5, 2007, the deadline for filing a petition for review in the California Supreme Court; and, 2) whether petitioner received sufficient notice of the denial of his direct appeal by the California Court of Appeal from his appellate counsel in order to timely file a pro se petition for review. See Haines v. Kerner, 404 U.S. 519 (1972) (pro se pleadings should be liberally construed); see

---

[10] See ECF No. 64-2 at 12-13, 141-42 (Declarations of Larry Chatman).

1  also ECF No. 96 (Order of March 1, 2018); Cal. R. Court, Rule 8.366(b)(1); Cal. R. Court,

2  Rule 8.500(e)(1).[11]

3      Petitioner filed the requested declaration indicating that he did not receive the letter from

4  his direct appeal counsel notifying him of the denial of his IAC of trial counsel claim until

5  "March 2007" even though it was dated February 23, 2007.  ECF No. 98 at 2.  This delay was

6  attributed to petitioner's transfer from the California State Prison in Sacramento ("CSP-Sac") to

7  Solano State Prison in Vacaville.  Id.  Remarkably, petitioner attached the 2007 letter from direct

8  appeal counsel as well as a copy of the envelope it was sent in which indicates that it was

9  received by the CSP-Sac mailroom on February 26, 2007.  ECF No. 98 at 5.  The envelope also

10  contains a mailing label for the California Medical Facility in Vacaville ("CMF-Vacaville") and a

11  notation of "CMF" that is scratched out.  ECF No. 98 at 5.  Petitioner indicates in his declaration

12  that the letter was forwarded to CMF-Vacaville before finally reaching him at Solano State

13  Prison.  ECF No. 98 at 2.  The envelope appears to support petitioner's assertion as it also

14  contains a handwritten notation "Sol" in the addressee field.  ECF No. 98 at 5.  Based on this

15  evidence, petitioner declared that he did not receive notice of the California Court of Appeal's

16  decision in time to file a timely petition for review in the California Supreme Court.  ECF No. 98

17  at 2; see also ECF No. 64-2 at 19 (Letter from California Supreme Court returning untimely

18  petition for review).  He further declared that he did not have access to any legal assistance during

19  the time period from January 24, 2007 to March 5, 2007.  Id.

20      **II.    Law of the Case**

21      The Ninth Circuit Court of Appeals' remand order was clear.  Petitioner "produced

22  uncontroverted evidence demonstrating a long history of mental illness, including a report by a

23  psychiatric expert, Social Security Administration disability records, and prison medical records."

24  ECF No. 53 at 2.  No additional fact-finding by this court was necessary in order to conclude that

25  ─────────────────────────

26  [11] See also Murray v. Carrier, 477 U.S. 478, 487 (1986) (noting that "the rule applied by the
    [Fourth] Circuit Court of Appeals would significantly increase the costs associated with a
27  procedural default in many cases," and approving of the use of affidavits "or other simplifying
    procedures" by federal district courts in order to minimize the burdens to all parties).

28

equitable tolling was warranted.  Id. at 3-4 (finding that the record was also adequately developed to demonstrate that petitioner was diligent in pursuing his claims for relief).  These findings by the Ninth Circuit are now law of the case.  See Thomas v. Bible, 983 F.2d 152, 154 (9th Cir.) (reversing an award of attorneys' fees to defendants where a prior appeal decision, by implication, had concluded that plaintiff's action was not frivolous), cert. denied, 508 U.S. 951 (1993).

This court is precluded from reconsidering an issue that has already been decided by a higher court in the identical case.  See Milgard Tempering, Inc. v. Selas Corp. of America, 902 F.2d 703, 715 (9th Cir. 1990).  Here, law of the case doctrine applies because the severity and duration of petitioner's combined mental illness and intellectual disabilities were expressly before the Ninth Circuit in determining the availability of equitable tolling.  See Milgard, 902 F.2d at 715 (quoting Liberty Mut. Ins. Co. v. E.E.O.C., 691 F.2d 438, 441 (9th Cir. 1982)).  Petitioner is now relying on this same combination of mental illness and intellectual disabilities to argue that the procedural default of claim one should be excused.  See Schneider v. McDaniel, 674 F.3d 1144 (9th Cir. 2012).

### III.     Standards Governing Habeas Relief Under the AEDPA

To be entitled to federal habeas corpus relief, petitioner must affirmatively establish that the state court decision resolving the claim on the merits "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or … resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. § 2254(d).  The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different, as the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively

13

> unreasonable, and we stressed in <u>Williams [v. Taylor</u>, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

<u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." <u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011) (quoting <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Richter</u>, 562 U.S. at 103.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71-72 (2003). Clearly established federal law also includes "the legal principles and standards flowing from precedent." <u>Bradley v. Duncan</u>, 315 F.3d 1091, 1101 (9th Cir. 2002) (quoting <u>Taylor v. Withrow</u>, 288 F.3d 846, 852 (6th Cir. 2002)). Only Supreme Court precedent may constitute "clearly established Federal law," but circuit law has persuasive value regarding what law is "clearly established" and what constitutes "unreasonable application" of that law. <u>Duchaime v. Ducharme</u>, 200 F.3d 597, 600 (9th Cir. 2000); <u>Robinson v. Ignacio</u>, 360 F.3d 1044, 1057 (9th Cir. 2004).

Relief is also available under the AEDPA where the state court predicates its adjudication of a claim on an unreasonable factual determination. 28 U.S.C. § 2254(d)(2). The statute explicitly limits this inquiry to the evidence that was before the state court. <u>See</u> also <u>Cullen v. Pinholster</u>, 563 U.S. 170 (2011). Under § 2254(d)(2), factual findings of a state court are presumed to be correct subject only to a review of the record which demonstrates that the factual finding(s) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." It makes no sense to interpret "unreasonable" in § 2254(d)(2) in a manner different from that same word as it appears in § 2254(d)(1) – i.e., the factual error must be so apparent that "fairminded jurists" examining the

1   same record could not abide by the state court factual determination.  A petitioner must show

2   clearly and convincingly that the factual determination is unreasonable.  See Rice v. Collins, 546

3   U.S. 333, 338 (2006).

4        To prevail in federal habeas proceedings, a petitioner must establish the applicability of

5   one of the § 2254(d) exceptions and also must also affirmatively establish the constitutional

6   invalidity of his custody under pre-AEDPA standards.  Frantz v. Hazey, 533 F.3d 724 (9th Cir.

7   2008) (en banc).  There is no single prescribed order in which these two inquiries must be

8   conducted.  Id. at 736-37.  The AEDPA does not require a federal habeas court to adopt any one

9   methodology.  Lockyer v. Andrade, 538 U.S. 63, 71 (2003).

10       **IV.     Standards Governing IAC Claims**

11       The two prong Strickland standard governing ineffective assistance of counsel claims is

12  well known and oft-cited.  Strickland v. Washington, 466 U.S. 668 (1984).  It requires petitioner

13  to establish (1) that counsel's representation fell below an objective standard of reasonableness;

14  and, (2) that counsel's deficient performance prejudiced the defense.  Strickland, 466 U.S. at 692,

15  694.  "The question is whether an attorney's representation amounted to deficient performance

16  under 'prevailing professional norms,' not whether it deviated from best practices or most

17  common custom."  Harrington v. Richter, 562 U.S. 86, 105 (2011) (citing Strickland, 466 U.S. at

18  690).  Prejudice is found where "there is a reasonable probability that, but for counsel's

19  unprofessional errors, the result of the proceeding would have been different.  A reasonable

20  probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466

21  U.S. at 693.  "That requires a 'substantial,' not just 'conceivable,' likelihood of a different result."

22  Cullen v. Pinholster, 563 U.S. 170, 189 (2011) (quoting Richter, 562 U.S. 86, 111-12 (2011)).

23       In reviewing a Strickland claim under the AEDPA, the federal court is "doubly

24  deferential" in determining whether counsel's challenged conduct was deficient.  "When §

25  2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is

26  whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."

27  Richter, 562 U.S. 86, 105 (2011).

28  /////

**V.     Claim One – Ineffective Assistance of Counsel**

    **A.     Procedural Default**

Respondent contends that claim one is procedurally defaulted based on the California Supreme Court's determination that it was not timely presented to the state court. See ECF No. 78-5 at 242. Petitioner filed a traverse on February 3, 2017 asserting that the procedural default doctrine does not bar relief in this case. Petitioner concedes that California's timeliness bar has generally been found independent and adequate to bar federal review on the merits, but asserts that there is adequate cause and prejudice to excuse the default in this case based on the combination of petitioner's severe mental illness and intellectual disabilities. ECF No. 93 at 7-8 (Traverse).

The procedural default doctrine is based on concerns of comity and federalism and is therefore not a jurisdictional bar to a federal court's consideration of the merits of a claim that was not reviewed by a state court due to an independent and adequate state law ground. See Coleman, 501 U.S. 722, 730 (1991); Reed v. Ross, 468 U.S. 1, 9 (1984). In light of petitioner's concession that California's timeliness bar is independent and adequate to bar federal review, this court will proceed to determine whether petitioner has demonstrated adequate cause and prejudice to excuse the default of claim one.[12] See ECF No. 93 at 7 (citing Martin v. Walker, 562 U.S. 307 (2011) and Bennett v. Mueller, 322 F.3d 573, 582-83 (9th Cir. 2003)). Generally, a federal court will not review the merits of a procedurally defaulted claim unless a petitioner demonstrates "cause" for the failure to properly exhaust the claim in state court as well as "prejudice" resulting from the alleged constitutional violation. Coleman v. Thompson, 501 U.S. 722, 750 (1991).

    **1.     Cause**

The general cause standard for excusing procedural default requires petitioner to show that "some objective factor external to the defense impeded counsel's efforts to construct or raise the claim." McCleskey v. Zant, 499 U.S. 467, 493 (1991) (internal quotations omitted). The cause standard will be met, for example, where the claim rests upon a new legal or factual basis

---

[12] Petitioner does not raise the fundamental miscarriage of justice exception as an alternative basis to excuse petitioner's procedural default of claim one. See Schlup v. Delo, 513 U.S. 298 (1995).

that was unavailable at the time of direct appeal, or where "interference by officials" may have prevented the claim from being brought earlier. <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986). A petitioner may also show cause by establishing constitutionally ineffective assistance of counsel, but attorney error short of constitutionally ineffective assistance of counsel does not constitute cause and will not excuse a procedural default. <u>McCleskey</u>, 499 U.S. at 494.

### a. Mental Condition[13]

In this case, petitioner is relying on an additional carve-out to the procedural default rule articulated by the Ninth Circuit Court of Appeal in <u>Schneider v. McDaniel</u>, 674 F.3d 1144 (9th Cir. 2012). <u>See also</u> <u>Dickens v. Ryan</u>, 740 F.3d 1302 (9th Cir. 2014) (en banc) (remanding for consideration of whether habeas petitioner can establish cause and prejudice to excuse the procedural default of an IAC at sentencing claim for failing to investigate and obtain evidence that petitioner suffered from organic brain damage and Fetal Alcohol Syndrome under <u>Martinez v. Ryan</u>, 132 S. Ct. 1309 (2012)); <u>Holt v. Bowersox</u>, 191 F.3d 970, 974 (8th Cir. 1999) (holding that a petitioner's mental illness may constitute cause to excuse procedural default where there is "a conclusive showing that mental illness interfered with a petitioner's ability to appreciate his or her position and make rational decisions regarding his or her case at the time during which he or she should have pursued post-conviction relief"). In <u>Schneider</u>, the Court of Appeal recognized that "<u>Hughes</u> [v. Idaho State Board of Corrections, 800 F.2d 905, 908 (9th Cir. 1986),] and <u>Tacho</u> [v. Martinez, 862 F.2d 1376 (9th Cir. 1988),] do not necessarily foreclose the possibility that a pro se petitioner might demonstrate cause in a situation where a mental condition rendered the petitioner completely unable to comply with a state's procedures and he had no assistance." <u>Id.</u> at 1154. Petitioner's March 16, 2018 declaration, in conjunction with the law of the case, leads the

---

[13] This court recognizes that the legal standard for equitable tolling based on a petitioner's mental illness is not the same as the standard for cause to excuse petitioner's procedural default. If it were, the court would have been able to bypass petitioner's procedural default without the necessity of supplementing the record with petitioner's affidavit. The bar is higher for excusing petitioner's procedural default due to state court comity concerns. <u>See</u> <u>Schneider v. McDaniel</u>, 674 F.3d 1144, 1154-55 (9th Cir. 2012) (discussing the rather "strange" result that petitioner's mental condition impeded his ability to timely file so as to warrant equitable tolling, but the same condition was not sufficient to excuse his procedural default).

court to conclude that petitioner has met his burden of demonstrating that his mental illness and intellectual disabilities, in combination with one another, rendered him completely unable to comply with California's procedure for filing a petition for review within 40 days from the California Court of Appeal's denial of relief.[14] See ECF No. 1-1 at 2-3 (Petitioner's affidavit describing his mental health diagnoses and medication regimen during and after his state court direct appeal). It is this unique combination of a documented IQ of 69, the language skills of a third-grader, a psychotic disorder, as well as paranoid schizophrenia that allows petitioner to pass through the narrowest of exceptions to procedural default.[15] See ECF No. 78-2 at 18-23 (Report of Dr. Carlton Purviance). It simply cannot be said that this combination of conditions imposes less of a restriction on petitioner's ability to seek state court review than an inmate who is merely illiterate but retains the rest of his mental and verbal faculties.[16] Compare Hughes, 800 F.2d at 908. The record also demonstrates that petitioner did not have *any* access to legal assistance, jailhouse or otherwise, during this 40-day time period. See ECF No. 98 at 2 (emphasis added). Petitioner's lack of access to any legal assistance is due in part to his disordered mental state. As

---

[14] This court's analysis of cause to excuse the procedural default must look at the time period when the actual default occurred. See Calderon v. Bean, 96 F.3d 1126, 1130 (9th Cir. 1996) (holding that the proper time for determining whether a procedural rule was firmly established and regularly followed is "the time of [the] purported procedural default"), cert. denied, 520 U.S. 1204 (1997); Fields v. Calderon, 125 F.3d 757, 760 (9th Cir. 1997) (discussing the proper date on which a state court's procedural rule is to be measured in determining its adequacy so as to bar subsequent review of the claim on the merits based on the procedural default doctrine and adopting the view that the correct "trigger date" is the time when the defaulted claims should have been raised). In this particular case, the procedural default of petitioner's IAC claim occurred when he failed to file a petition for review in the California Supreme Court. That timeframe was extremely short, i.e. 40 days, and ran from January 24, 2007, the day after the California Court of Appeal denied relief on his first ineffective assistance of trial counsel claim, until March 5, 2007, the deadline for filing a petition for review in the California Supreme Court.

[15] This court has previously found the same combination of circumstances sufficient to constitute "cause" to excuse petitioner's failure to exhaust claims one, three, and four of the second amended § 2254 petition. See ECF Nos. 69 at 10 (Findings and Recommendation); 72 (Order adopting Findings and Recommendations).

[16] The description of petitioner's mental faculties by other inmates demonstrates this point. "I became aware, after talking to Inmate Chatman, that he was not all there in his mind: he would repeat the same words over, talk in a loud tone, dart his tongue in and out of his mouth, and laugh for no reason." Declaration of Jamal Easterling, at 2.

18

petitioner colorfully described: "I attempted to find someone to prepare a habeas petition for me, but because of my mental disorder and excursive mannerism from the effects of the anti-psychotic medication, I was considered an abomination and treated as an outcast." ECF No. 19 at 22. In light of all of this evidence, petitioner has established cause under <u>Schneider</u> to excuse the procedural default of claim one.[17]

**b.      IAC of Appellate Counsel for Failing to File a Petition for Review**

As an additional basis for cause to excuse his procedural default of his first IAC claim, petitioner submitted evidence establishing that he did not receive notice of the California Court of Appeal's denial of his direct appeal in sufficient time to file a petition for review in the California Supreme Court. <u>See</u> ECF No. 98. "[A]ttorney's errors during an appeal on direct review may provide cause to excuse a procedural default; for if the attorney appointed by the State to pursue the direct appeal is ineffective, the prisoner has been denied fair process and the opportunity to comply with the State's procedures and obtain an adjudication on the merits of his claims." <u>Martinez</u>, 132 S. Ct. at 1317. While the parties' briefing in this matter focuses on whether direct appeal counsel was ineffective for failing to file a petition for review, the undersigned finds that the actual issue before the court is whether appellate counsel's failure to communicate the California Court of Appeal's denial to petitioner in a timely fashion constitutes ineffective assistance under <u>Strickland</u>.

The Sixth Amendment right to the "guiding hand of counsel" applies at trial proceedings as well as to a first appeal as of right. <u>See</u> <u>Evitts v. Lucey</u>, 469 U.S. 387, 396 (1985) (holding that due process requires the effective assistance of counsel during the first appeal as of right); <u>Gideon v. Wainwright</u>, 372 U.S. 335 (1963) (extending the right to counsel to indigent criminal defendants); <u>Douglas v. California</u>, 372 U.S. 353, 357 (1963) (extending the Sixth Amendment

---

[17] While petitioner argues that the procedural default of claims one, three, and four should all be excused on the basis of his mental health conditions and intellectual disabilities, the court finds that this was only the cause of his procedural default of claim one. <u>See</u> ECF No. 93 at 7. This was not the cause of his default of the <u>Batson</u> and cumulative error claims which occurred when appellate counsel initially failed to include them in petitioner's direct appeal to the California Court of Appeal. Accordingly, the procedural default of the <u>Batson</u> and cumulative error claims will be discussed separately.

right to counsel to indigent criminal defendants on direct appeal); <u>Powell v. Alabama</u>, 287 U.S. 45, 69 (1932) (emphasizing the constitutional importance of defense counsel) . As the Ninth Circuit recognized, "[t]here is nothing in our jurisprudence to suggest that the Sixth Amendment right to effective counsel is weaker or less important for appellate counsel than for trial counsel." <u>Ha Van Nguyen v. Curry</u>, 736 F.3d 1287 (9th Cir. 2013). Here, appellate counsel had an ethical duty to communicate the California Court of Appeal decision to petitioner. <u>See</u> Cal. Rules of Professional Conduct, Rule 3-500 (stating that "[a] member shall keep a client reasonably informed about significant developments relating to the employment or representation, including promptly complying with reasonable requests for information and copies of significant documents when necessary to keep the client so informed."). The court incorporates this standard in evaluating whether appellate counsel was ineffective in accordance with <u>Strickland</u>. <u>See</u> <u>United States v. Nickerson</u>, 556 F.3d 1014 (9th Cir. 2009) ("readily acknowledge[ing] that a violation of professional or ethical rules could lead to a deficient attorney performance that prejudices the defendant, as contemplated by <u>Strickland</u>," but declining to adopt such a per se rule).

Petitioner's appellate counsel delayed sending notification of the direct appeal result since the only correspondence from counsel in the record is dated a month after the decision of the California Court of Appeal. ECF No. 98 at 4. Although appellate counsel's correspondence indicates that this was the second copy of the opinion provided to petitioner, this is not supported by any other evidence in the record and is directly contradicted by petitioner's declaration. <u>Compare</u> ECF No. 98 at 4 <u>with</u> ECF No. 98 at 1-2. According to his affidavit, petitioner did not receive any copy of the opinion from appellate counsel other than that dated February 23, 2007. ECF No. 98 at 2. Ultimately, petitioner did not receive it until after the March 5, 2007 deadline had passed. <u>Id.</u> Therefore, appellate counsel did not notify petitioner of the Court of Appeal decision for a period of 30 days, absent any consideration of the additional time necessary for petitioner to actually receive it through the United States Postal Service as well as the prison mailroom. <u>Id.</u> at 4.

To constitute cause sufficient to excuse petitioner's procedural default, appellate counsel's failure to notify petitioner must rise to the level of an independent violation of a defendant's

constitutional right to the assistance of counsel.[18] See Coleman, 501 U.S. at 753. In this case appellate counsel's performance was deficient under prevailing professional norms because the California Rules of Professional Conduct required "promptly" notifying petitioner of the significant development in his case and providing him with a copy of the Court of Appeal decision. See Strickland, 466 U.S. at 686; Cal. Rules of Professional Conduct, Rule 3-500. To constitute prejudice, petitioner must demonstrate a reasonable probability of a different outcome absent counsel's error. See Strickland, 466 U.S. at 693. Had appellate counsel timely informed petitioner of the California Court of Appeal denial, petitioner may have been able to timely file a petition for review in the California Supreme Court and thus not procedurally defaulted his first IAC claim. However, this court is not a soothsayer and cannot say with any degree of reasonable probability, what the California Supreme Court would have done had it reviewed the first IAC claim on the merits. See Moormann v. Ryan, 628 F.3d 1102, 1106 (9th Cir. 2010) (explaining that Strickland's prejudice prong in the appellate context requires a petitioner to "demonstrate a reasonable probability that, but for appellate counsel's failure to raise the issue, the petitioner would have prevailed in his appeal"). Accordingly, petitioner has not demonstrated prejudice under Strickland and is not entitled to have his procedural default excused based solely on the ineffectiveness of appellate counsel in failing to notify petitioner of the direct appeal decision.

### c. Objective Factors External to Petitioner

Petitioner further asserts that his appellate counsel's delay, even if not rising to the level of ineffectiveness, constitutes "an objective external factor beyond Chatman's control that prevented him from filing a pro se petition for review" in the California Supreme Court. ECF No. 93 at 10. The delay in receiving the notification was also due in part to delays attributable to the CDCR mailroom. ECF No. 98 at 5. The mailing envelope provided by petitioner demonstrates that the letter traveled to three different prisons before it finally was delivered to petitioner

---

[18] This court recognizes that there is a circuit split with respect to whether AEDPA deference or de novo review is used in reviewing an ineffective assistance of counsel claim that may constitute cause to excuse a procedural default. See Visciotti v. Martel, 862 F.3d 749, 769 & N. 13 (9th Cir. 2016), cert. denied, 138 S. Ct. 1546 (2018). However, the law in this circuit is that AEDPA deference does not apply when reviewing the cause and prejudice necessary to excuse a procedural default. Id.

sometime after March 5, 2007. ECF No. 98 at 2, 5. On this factual record, petitioner has demonstrated that the delay in delivering his legal mail by CDCR officials constituted interference preventing his IAC claim from being timely presented to the California Supreme Court. Murray v. Carrier, 477 U.S. at 488. The undersigned finds that the delay in petitioner's receipt of notice of the direct appeal denial was attributable to a combination of his direct appeal attorney's failure to timely communicate the result as well as CDCR's mailroom delay which were both factors beyond petitioner's control. See ECF No. 98 at 4 (Letter from Christopher Blake dated February 23, 2007), 5 (Legal mail envelope from Christopher Blake, Esq. to Mr. Larry Chatman); see also Coleman, 501 U.S. at 753. While this is an unusual circumstance, the Ninth Circuit Court of Appeal has emphasized that courts are not "limited to considering only those actions that fit within previously recognized fact patterns as cause for a procedural default." Manning v. Foster, 224 F.3d 1129, 1134 (9th Cir. 2000). Accordingly, the court finds that petitioner has demonstrated additional cause sufficient to excuse the procedural default of his IAC of trial counsel claim based on the combination of mail delays caused by his direct appeal attorney and the CDCR's mailroom.

## 2. Prejudice

Since petitioner has succeeded in establishing two separate grounds for cause, the court now considers whether prejudice on the underlying IAC claim has been established which would not only allow the court to bypass procedural default, but would also allow the court to review the merits of this same IAC claim. Before conducting such prejudice analysis, however, the court first addresses the standard to be utilized in doing so. Petitioner asserts in his traverse that the more equitable cause and prejudice standard announced in Martinez v. Ryan, 566 U.S. 1 (2012), applies to this case. See ECF No. 93 at 9. In Martinez, the Supreme Court held that:

> "when a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim… where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial… [or] where appointed counsel in the initial-review collateral proceeding… was ineffective…. [A] prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner

must demonstrate that the claim has some merit."

566 U.S. at 14 (internal citations omitted). Respondent contests this assertion by pointing out that the IAC claim at issue here was in fact raised and rejected on direct appeal. See ECF No. 77-1 at 17. Furthermore, the Supreme Court explicitly explained in Martinez that the Coleman standard for cause and prejudice still applied to "petitions for discretionary review in a State's appellate courts." Martinez, 566 U.S. at 16. Since petitioner is arguing that his direct appeal attorney was ineffective for failing to raise the IAC claim in a petition for discretionary review in the California Supreme Court, the Martinez standard does not apply.

With that understanding, petitioner must demonstrate "not merely" that his trial counsel's ineffectiveness "created a possibility of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982) (emphasis in original). For the reasons discussed more fully in subsection D *infra*, the undersigned finds that trial counsel's failure to investigate petitioner's mental health background meets this standard because it related to the intent necessary to commit the crime of attempted premeditated first-degree murder.

### B. Last Reasoned State Court Decision

Having determined that the California Supreme Court's application of a timeliness bar to the IAC claim does not preclude federal review on the merits, this court looks to the last reasoned state court decision in applying the 28 U.S.C. § 2254(d) standard. Wilson v. Sellers, ___ U.S. ____, 138 S. Ct. 1188 (2018) (adopting the Ylst look through presumption post-Richter); Harrington v. Richter, 131 S. Ct. 770, 785 (2011); Ylst v. Nunnemaker, 501 U.S. 797 (1991) (establishing the "look through" doctrine in federal habeas cases). In denying relief on direct appeal, the California Court of Appeal reasoned as follows:[19]

> Chatman contends that [trial counsel] performed deficiently because she 'never really explored the possibility of a mental defense.' Chatman cites nothing in this record to support his factual

---

[19] The state court opinion refers to trial counsel by name. This court finds that information irrelevant in determining the reasonableness of the state court decision. Therefore, the court has substituted "trial counsel" for counsel's specific name throughout the California Court of Appeal opinion. The substitution appears in brackets.

contentions that [trial counsel] did not investigate Chatman's mental history or consider presenting a mental defense. Instead, he offers this very wrong argument: '[trial counsel] never testified at the hearing below despite the fact that respondent could have called her as a witness; she never offered a declaration to show that she consulted with mental health experts or with appellant's family regarding his mental health … issues. From this can only come the conclusion that she did absolutely nothing

Chatman, not [trial counsel], carries the burden of overcoming a presumption that [trial counsel] rendered adequate assistance. Therefore, absent affirmative evidence to the contrary, we presume that [trial counsel] did conduct an adequate investigation in connection with the preparation of Chatman's defense.

Furthermore, [trial counsel] was not required to conduct an exhaustive investigation into Chatman's mental health history in order to render effective assistance. '[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In an ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'" In re Andrews (2002) 28 Cal. 4th 1234, 1254, quoting Strickland v. Washington (1984) 466 U.S. 668, 690-91, 80 L. Ed. 2d 674). Thus, to the extent [trial counsel] made a reasonable tactical decision to rely exclusively on self-defense, a decision not to investigate a mental defense would also have been reasonable.

'Reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel, and there is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' Defendant's burden is difficult to carry on direct appeal, as [our Supreme Court has] observed: 'Reviewing courts will reverse convictions [on direct appeal] on the ground of inadequate counsel only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for [his or her]act or omission.' (People v. Lucas, supra, 12 Cal. 4th at pp. 436-37.)

Here, the record before us does not affirmatively show that [trial counsel] had no rational tactical purpose for relying solely on a claim of self-defense. Rather, the circumstances support the conclusion that [trial counsel] made a reasonable tactical decision. Undeniably, there was evidence to support a self-defense theory. Indeed, Chatman's own expert conceded that defense was viable and reasonable. Had that defense persuaded the jury, Chatman would have been acquitted and would not have served any prison time.

Chatman's expert testified that he would have pursued a second line of defense, and used evidence of Chatman's mental health problems to argue for a lesser crime than attempted murder.

24

But that expert did not testify that failing to present such a theory was objectively unreasonable. In our view, a defense attorney could reasonably have concluded that pursuing such a theory would offer the jury an alternative too tempting to resist and that the best chance of obtaining an acquittal was to focus exclusively on reasonable doubt evidence. Furthermore, presenting evidence of Chatman's mental health problems could have undermined efforts to portray Chatman as the real victim of the holiday altercation.

Another circumstance bearing on the reasonableness of a defense attorney's tactical decision is the wishes of the client. Here, as the trial court observed, Chatman rejected two plea offers prior to trial both of which would have resulted in a significantly lower sentence than he could have expected to receive if convicted of a lesser included offense to attempted murder. This circumstance reinforces that the decision to maximize the chances of an acquittal was a reasoned one.

Chatman has failed to carry his burden of proving that [trial counsel] performed deficiently by relying solely on a defense which was supported by the evidence and which, if accepted, would have resulted in acquittal. Therefore we reject the claim that Chatman was denied the effective assistance of counsel.

ECF No. 64-2 at 7-8. The state court opinion only addressed <u>Strickland</u>'s deficient performance prong. It never reached the issue of whether petitioner could establish prejudice resulting from trial counsel's omission because it concluded that counsel's performance was not deficient. <u>Id.</u>

## C. AEDPA Analysis

In the answer, respondent argues that this IAC claim lacks merit because the state court's finding that trial counsel's decision was tactical is presumed correct and because trial counsel "could have reasonably decided not to investigate a mental health defense because it would have conflicted with petitioner's description of the incident and the self-defense theory she presented at trial." ECF No. 77-1 at 25, 26. Petitioner requests relief even under the deferential AEDPA standard of review because the California Court of Appeal's decision was objectively unreasonable in light of the record evidence establishing that trial counsel "did not conduct an appropriate investigation to explore other potential, more viable defense options" than self-defense. ECF No. 93 at 11-12.

### 1. 28 U.S.C. § 2254(d)(2)

While the California Court of Appeal found the record silent with respect to whether trial counsel investigated petitioner's mental health history, this court has reviewed the underlying

25

state court proceedings and believes that the record speaks volumes.  See ECF No. 64-2 at 7

(direct appeal opinion stating that petitioner "cites nothing in this record to support his factual

contentions that [trial counsel] did not investigate Chatman's mental history or consider

presenting a mental defense.").  Two specific examples from the post-trial hearing prove this

point.  First, Mr. Healy reviewed trial counsel's file prior to testifying and found petitioner's

clinical history completely absent from any of the 26 pages of file notes that trial counsel made.

ECF No 78-5 at 50 (emphasizing that "99 percent of it is a recitation of different witness'

views..." of the offense).  Additionally, and most importantly, there was no indication "[i]n all of

the interviews of all of the witnesses" that trial counsel made "any inquiry whatsoever regarding

petitioner's psychological history."  ECF No. 64-2 at Appendix 92.  Considering all of the

witnesses in this case were related to petitioner and provided ample detail of petitioner's

psychological history when asked by Dr. Purviance, the psychologist who testified at the post-

trial hearing, there is no basis upon which to describe this record as silent.

The state court decision presumed that trial counsel conducted an adequate investigation

notwithstanding evidence in the record to the contrary.  "[A]bsent affirmative evidence to the

contrary, we presume that… [trial counsel] did conduct an adequate investigation in connection

with the preparation of Chatman's defense."  ECF No. 64-2 at 7.  However, since trial counsel's

decision concerning which defense to present at trial was not informed by *any* investigation of

petitioner's mental health history, the state court unreasonably determined that it was a reasonable

tactical decision.  28 U.S.C. § 2254(d)(2); see also Strickland, 466 U.S. 668, 690-91

(1984)(finding that a strategic tactical decision must be made *after* an investigation of the relevant

facts) (emphasis added); Evans v. Lewis, 855 F.2d 631 (9th Cir. 1988) (finding deficient

performance where counsel failed to review available documents); Jennings v. Woodford, 290

F.3d 1006 (9th Cir. 2002) (finding deficient performance where counsel failed to investigate

mental state issues), cert. denied, 539 U.S. 958 (2003).  As Mr. Healy explained to the trial court,

"[y]ou can't know if it's reasonable if you didn't explore the other options, and… whether or not

it was reasonable or not, I think, depends on whether or not it was more or less viable than the

other possible defenses."  ECF No. 78-5 at 52.  Simply put, an omission by trial counsel cannot

be labeled as a "reasonable tactical choice" under Strickland unless it was ruled out as a possible alternative after a sufficient investigation of the facts and the law.  See Rios v. Rocha, 299 F.3d 796, 807, n. 18 (9th Cir. 2002) (emphasizing that "there is no possible justification for failing to at least conduct a preliminary investigation of both defenses before choosing one or both.").

In this case, the record of post-trial proceedings does not support the state court's conclusion that trial counsel's chosen defense at trial was a reasonable tactical decision.  While "[t]here is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than "sheer neglect.'"  Harrington, 562 U.S. at 109 (quoting Yarborough v. Gentry, 540 U.S. 1, 8 (2003) (per curiam)), here the state court unreasonably relied on this presumption even when the record established a complete lack of investigation concerning petitioner's mental health history.  The lack of a tactical basis for counsel's decision was detailed by Mr. Healy in the post-trial motion.  "[I]t's only as tactical as the quality of the information in front of you….[T]hat's kind of the point in this case.  I don't know if you can say a tactical decision was made… when you say that one of the options was not even considered because no one was aware of it."  ECF No. 78-5 at 71.  The court finds Mr. Healy's logic sound and supported by the evidence in this case.

The California Court of Appeal unreasonably determined the facts supporting its conclusion that trial counsel's decision was tactical in light of the evidence presented during the post-trial motion.  This was the only basis for the California Court of Appeal's rejection of the IAC claim.  It did not even reach the prejudice prong of Strickland because it concluded that trial counsel's performance was not deficient.  Accordingly, petitioner has established that the state court's decision on the performance prong of Strickland was "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  However, that by itself does not entitle petitioner to relief.  See Frantz v. Hazey, 533 F.3d 724 (9th Cir. 2008).  Petitioner's IAC claim is still subject to de novo review by this court.  See Panetti v. Quarterman, 551 U.S. 930, 925 (2007) (when § 2254(d) is satisfied, the federal habeas court resolves the claim "without the deference AEDPA otherwise requires"); Frantz v. Hazey, 533 F.3d at 737 (when § 2254(d) (1) is satisfied, the federal habeas court conducts de

novo review of constitutional claim).

## 2. 28 U.S.C. § 2254(d)(1)

Additionally, this court finds that the California Court of Appeal unreasonably applied Strickland when it utilized petitioner's decision to reject two separate plea offers of a determinate sentence in its evaluation of the reasonableness of trial counsel's failure to investigate. See 28 U.S.C. § 2254(d)(1); ECF No. 64-2 at 8. The California Court of Appeal's reference to rejected plea offers was legally irrelevant in assessing whether counsel's performance was deficient. ECF No. 64-2 at 8. The state court explained that it was relying on these rejected plea offers as "another circumstance bearing on the reasonableness" of trial counsel's tactical decision of failing to investigate petitioner's mental health history. ECF No. 64-2 at 8. However, in so doing, it misapprehended the role of defense counsel and conflated the decisions that trial counsel was responsible for making with those of the defendant. In Strickland, the Supreme Court utilized the ABA Standards on Criminal Justice in explaining the Sixth Amendment standard for determining whether counsel's performance was deficient. 466 U.S. at 688-89. While the ABA Standards note that "counsel should give great weight to strongly held views of a competent client regarding decisions of all kinds," it does not leave the decision as to which defense to present at trial up to the client. See ABA Standards for Criminal Justice, Standard 4-5.2 "Control and Direction of the Case" (4th ed. 2015). More importantly, trial counsel's duty to investigate is not tied to a defendant's decision to plead guilty. The ABA Guidelines emphasize that "[d]efense counsel has a duty to investigate in all cases, and…[t]he duty to investigate is not terminated by… a client's expressed desire to plead guilty or that there should be no investigation, or statements to defense counsel supporting guilt." ABA Standards for Criminal Justice, Standard 4-4.1(a)-(b) (4th ed. 2015). More simply put, the client's wishes cannot abrogate defense counsel's duty under Strickland to conduct an adequate investigation. The state court's utilization of petitioner's decision to reject two plea offers was an unreasonable application of Strickland.

"[T]he state court's ruling on the claim… was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 102 (2011). The lack of a fairminded

28

disagreement is evident from the absence of legal citations in the California Court of Appeal's analysis concerning petitioner's rejected plea offers. See ECF No. 64-2 at 8 (direct appeal opinion). Thus, the undersigned finds that petitioner also has met his burden under 28 U.S.C. § 2254(d)(1) entitling him to de novo review of the IAC claim.

### D.    De Novo Review of IAC Claim

Having already determined that the evidence in the record established that trial counsel failed to conduct any investigation into petitioner's mental health history, the undersigned concludes that defense counsel's performance was deficient under Strickland because that information was necessary to make an informed choice about which avenues of defense to pursue at trial. See Strickland, 466 U.S. at 690-91 (counsel's strategic decision only reasonable to the extent it is supported by reasonable investigation); Riley v. Payne, 352 F.3d 1313, 1318-19 (9th Cir. 2003) (failure to interview potential witness defeats argument that failure to present his testimony was reasonable strategic choice), cert. denied 543 U.S. 917 (2004). Such conduct was entirely unreasonable because petitioner was facing a life sentence and because petitioner's mental health history was easily accessible through the percipient witnesses to the crime who trial counsel interviewed or had a defense investigator interview. See ECF No. 78-4 at 281-292 (rebuttal testimony of defense investigator Anna Bandettini). All trial counsel had to do was simply start the conversation about petitioner's mental health condition, and these witnesses would have voluntarily provided a detailed and historical recitation of petitioner's severe mental illness as demonstrated by Dr. Purviance's testimony at the post-trial hearing. In this case, the Sixth Amendment standard of competency is not an onerous one. It literally required only "20 minutes and a couple of phone calls." ECF No. 78-5 at 48.

Prejudice due to counsel's deficient performance is established in this case because the jury struggled with the issue of specific intent and premeditation as demonstrated by their first question to the trial judge during deliberations.[20] See ECF No. 78-4 at 357-358 (jury question

---

[20] The jury was instructed that: If you find that the attempted murder was preceded and accompanied by a clear, deliberate intent to kill, which was the result of deliberation and premeditation, so that it must have been formed upon pre-existing reflection and not under a sudden heat of passion or other condition precluding the idea of deliberation, it is an attempt to

and judge's response). The jury asked whether "intent to kill require[s] knowledge that act would cause death?" ECF No. 78-4 at 357. The potential defense which trial counsel failed to investigate addressed the mental state required for attempted premeditated murder and would have provided the jury with a legal path to acquit petitioner of the life crime. Petitioner was facing a potential life term if convicted of attempted premeditated murder, but was only facing a maximum determinate term of 22 years if convicted of the lesser-included offense of attempted voluntary manslaughter. See ECF No. 78-5 at 67-69. The test for prejudice is whether there is a reasonable probability of a different outcome which is defined as a probability sufficient to undermine the court's confidence in the verdict. Strickland, 466 U.S. at 693.

When all of the post-trial mental health evidence is considered in light of the testimony at trial, the undersigned concludes that there is a reasonable likelihood that at least one juror, at a minimum, would have harbored a reasonable doubt about the premeditation element required to establish attempted first degree murder. For these reasons, the undersigned finds that petitioner's mental health background would have raised a reasonable doubt for the jury about whether petitioner acted with premeditation and deliberation. Accordingly, petitioner has demonstrated the reasonable probability of a different outcome at trial based on counsel's deficient performance in failing to investigate petitioner's mental health background to negate the intent required for attempted premeditated murder.

However, that is not the end of the story. The question still remains as to the appropriate remedy for the Sixth Amendment violation that occurred in this case that only affected one of the counts for which petitioner was convicted, albeit the most serious one. The Supreme Court has emphasized that "Sixth Amendment remedies should be 'tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests.'" Lafler v. Cooper, 566 U.S. 156, 170 (2012) (quoting United States v. Morrison, 449 U.S. 361, 364 (1981)).

commit willful, deliberate and premeditated murder…. To constitute willful, deliberate, and premeditated attempted murder, the would-be-slayer must weigh and consider the question of killing and the reasons for and against such a choice and, having in mind the consequences, decides to kill and makes a direct but ineffectual act to kill another human being." ECF No. 78-1 at 109-110.

Since the constitutional violation precluded petitioner's mental health defense from being presented at trial, the conviction itself and not just the sentence for attempted premeditated murder is tainted by constitutional error. Accordingly, the appropriate remedy would require vacating petitioner's conviction for premeditated attempted murder.

## VI.     Claim Two – Ineffective Assistance of Counsel

In his second claim for relief, petitioner contends that his trial counsel was ineffective for relying on a self-defense theory without ever calling petitioner to testify. See ECF No. 64-1 at 20-23. He argues that the self-defense theory stood "no chance of success" without such testimony from Chatman. Id. at 21. Counsel for petitioner points to Chatman's recorded statement to the police following his arrest presumably to establish the purported content of petitioner's testimony had counsel called him to testify at trial. Id. at 22. Chatman told the police that Everetts attacked him twice and the third time he defended himself. Id. (citing ECF No. 64-2 at 137). The "[f]irst time he jumped up and pushed me down so hard my whole hip, tailbone swolled up when I got home…. The second time he attacked me from the back and scratched me in the face and the third time, I defended myself." ECF No. 64-2 at 137. Petitioner then stated that he had "something" and then Everetts "grabbed it." Id. When asked what that something was, petitioner stated that he couldn't remember because "[e]verything went blank." Id. Petitioner provided no further details about the incident to the police. He did relay this same information to his trial attorney during their first meeting. ECF No. 64-2 at 140. (Declaration of Larry Chatman). "I informed [her] that Everetts (the victim) had attached [sic] me earlier that day and that it did appear to me that he was going to attack me again; so I attacked him first to defend myself from attack. I told counsel [] that I wanted to testify, so I could tell the jury my side of the story and why I feared he would attack me again." Id. Petitioner's common-law wife submitted an affidavit indicating that trial counsel told her that "Mr. Chatman is not testifying as long as I am representing him. He has serious prior convictions I do not want the jury to know about." ECF No. 64-2 at 144.

Respondent argues that this claim fails on the merits because trial counsel's decision not to call petitioner to testify was a reasonable tactical decision because he would have been

31

1  impeached with his prior assault conviction.  See ECF No. 77-1 at 29-30; see also ECF No. 78-3

2  at 22 (trial court's preliminary ruling on motion in limine).

3       The last reasoned state court opinion on this claim is the Solano County Superior Court's

4  habeas denial dated May 20, 2009.  See ECF No. 64-2 at 9-10.  The trial court denied relief

5  finding that counsel's performance was not deficient under Strickland v. Washington, 466 U.S.

6  668, 687-88 (1984).  Id. at 10.  "Trial counsel advised Petitioner not to testify because he had a

7  2001 prior felony conviction for violating Penal Code § 245(a)(1), assault…. Only two years had

8  passed between the prior conviction and the incident that lead to the charges…, so trial counsel

9  was reasonable in assuming that the prior conviction would negatively impact the defense case."

10  Id.

11       The state court opinion rejecting this claim was not contrary to nor an unreasonable

12  application of Strickland.  Trial counsel's advice to petitioner was reasonable in light of the type

13  of prior conviction that petitioner had sustained as well as the fact that it occurred only two years

14  prior to the events on trial.  See also Dows v. Wood, 211 F.3d 480 (9th Cir. 2000) (finding neither

15  deficient performance nor prejudice based on trial counsel's advice that defendant not testify at

16  his trial in light of his three prior convictions for robbery and assault).  The reasonableness of that

17  advice is highlighted by the fact that petitioner does not cite to a single case where trial counsel

18  has been found ineffective in such circumstances.  For all these reasons, the undersigned

19  recommends denying relief on this ineffective assistance of counsel claim.

20       Even assuming arguendo that the state court unreasonably concluded that trial counsel's

21  performance was not deficient, there is absolutely no way that petitioner could establish prejudice

22  from trial counsel's advice that petitioner not testify at trial.  Following petitioner's argument to

23  its logical conclusion, the trial would have boiled down to a credibility contest between Everetts

24  and Chatman since there were no other eyewitnesses to the actual altercation.  In such a

25  credibility contest, the court is not persuaded that there is a reasonable probability of a different

26  outcome based on the absence of any critical details in petitioner's purported testimony.

27  Petitioner could not even remember what type of weapon was used in the attack.  His purported

28  testimony would have consisted of nothing more than self-serving and conclusory statements that

32

he acted in self-defense.  Especially when considered in conjunction with his recent conviction for assault, it is not reasonably probable that the jury would have returned a not-guilty verdict based on petitioner's testimony that he acted in self-defense.  Accordingly, petitioner fails to demonstrate that there is any prejudice due to trial counsel's failure to call him as a witness.

To the extent that petitioner also claims that sentencing and appellate counsel were ineffective for failing to raise this issue in a motion for a new trial and on direct appeal, the court recommends denying relief.  <u>See</u> ECF No. 64-1 at 20; ECF No. 93 at 15.[21]  Since there is no merit to the underlying claim, there is no prejudice from sentencing and appellate counsels' decision not to raise this claim.

## VII.    Claim Three – Batson Error

In his third claim for relief, petitioner contends that the prosecutor violated <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986), by removing three African Americans from the jury venire with peremptory challenges.  Before contesting the merits of this claim, respondent argues that it is procedurally defaulted because the California Supreme Court denied it as untimely when it was raised for the first time in a counseled state habeas petition.  <u>See</u> ECF No. 77-1 at 31.  To excuse the procedural default, petitioner alleges that his appellate lawyer was ineffective for not raising the <u>Batson</u> claim in his direct appeal to the California Court of Appeal.[22]  <u>See</u> ECF No. 93 at 10-11.

Applying the two-part <u>Strickland</u> standard, the court finds that appellate counsel's performance was not deficient for failing to present the <u>Batson</u> claim to the California Court of Appeal.  As has oft been repeated, the "hallmark of effective appellate advocacy" is the

---

[21] Petitioner raises these claims in the heading to his second claim for relief, but then provides absolutely no briefing in support of them in his second amended habeas petition.  Accordingly, the court gives them the same amount of attention.

[22] It should be pointed out that no other basis for cause exists to excuse this procedural default because petitioner was represented by counsel when the <u>Batson</u> claim was presented to the California Supreme Court.  <u>See</u> ECF No. 78-5 at 197-234 (counseled California Supreme Court habeas petition). Thus, petitioner's mental condition did not play any role in his failure to comply with the state court's procedural rules that led to the default.  The only potential cause is appellate counsel's ineffectiveness for not raising the <u>Batson</u> claim on direct appeal.

winnowing down of claims.  See Smith v. Murray, 477 U.S. 527, 536 (1986) ("Th[e] process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.") (internal quotation marks omitted).  Here, appellate counsel not only chose to present an IAC of trial counsel claim which this court finds meritorious, but also presented a second claim based on juror misconduct.  Presenting a third claim based on *Batson* would not have broadened the remedies available to the court of appeal had relief been granted.  The IAC of trial counsel and the juror misconduct claim would both require vacating petitioner's convictions and granting him a new trial, just as a Batson claim would have.  See ECF No. 78-5 at 131 ("Appellant therefore respectfully submits that he is entitled to a new trial because of juror misconduct… and because his trial counsel failed to explore his most viable defense….").  So there was no strategic or tactical advantage to adding the Batson claim to the direct appeal.  See Strickland, 466 U.S. at 668.  In the absence of any strategic advantage for adding this claim to the direct appeal brief, the court cannot find that appellate counsel's performance was deficient under Strickland much less that it was prejudicial.[23]  Accordingly, it does not constitute cause to excuse petitioner's procedural default of his Batson claim and federal review on the merits is foreclosed.  See Coleman v. Thompson, 501 U.S. 722, 748 (1991) (emphasizing that "a state procedural default of any federal claim will bar federal habeas unless the petitioner demonstrates cause and actual prejudice.") (citing Engle v. Isaac, 456 U.S. 107, 135 (1982)).

## VIII.   Claim Four – Cumulative Error

Petitioner only raises this free-standing claim for relief in the event that "claims one through three were not independently sufficiently prejudicial to warrant habeas relief" on their own.[24]  ECF No. 93 at 18.  However, the court has concluded that claim one warrants habeas

---

[23] Thus, the court finds it unnecessary to determine what prejudice standard would apply if adequate cause was found to excuse the procedural default of the Batson claim.  Compare ECF No. 77-1 at 32 (Answer) with ECF No. 93 at 18 n. 4 (Traverse) (arguing that the Martinez standard applies).

[24] The undersigned finds it unnecessary to resolve the issue of the procedural default of the cumulative error claim, choosing instead to address the merits.

34

relief based on trial counsel's failure to investigate and present petitioner's mental health history. The undersigned finds that there is no other constitutional violation presented in this federal habeas petition. Therefore, the court recommends denying relief on this claim on the merits because there is no cumulative error in this case.

### IX.    Summary

In light of the lengthy and complicated procedural posture of this case, the court will summarize its findings with respect to each of the four claims raised by petitioner. The undersigned found cause and prejudice to excuse the procedural default of petitioner's first claim that his trial attorney was ineffective for failing to investigate and present evidence of his mental health history to negate the intent required for attempted premeditated murder. When reviewing the merits of this claim, the court found that AEDPA deference did not apply because the state court unreasonably determined the facts and unreasonably applied the Strickland standard of review. Therefore, the claim was reviewed on the merits de novo. In so doing, the court found that trial counsel's performance was not only deficient, but also was prejudicial under Strickland thereby entitling petitioner to relief on this claim.

In his second claim for relief, petitioner asserted that his trial attorney was ineffective for relying on self-defense without calling petitioner to testify. The court found that the last reasoned state court decision denying relief on this claim was not unreasonable under the AEDPA. Therefore, the undersigned recommends denying relief on the merits of this claim.

With respect to petitioner's Batson challenge raised in claim three, the court found that it was procedurally defaulted based on the independent and adequate state law ground of untimeliness. This default was not excused by appellate counsel's failure to raise the claim on direct appeal or on any other basis. Accordingly, the court concluded that review on the merits of this claim is foreclosed.

Lastly, the court determined that the cumulative error claim was easier to resolve on the merits. It therefore declined to address whether this claim was procedurally defaulted. Even on the merits, this claim failed because the court only found a single constitutional violation. Therefore, in this case, there is no cumulative error.

## X.  Recommendation

This case, more than most, demonstrates the long and complicated path that a state prisoner must travel in order to obtain federal habeas relief under the AEDPA.  While the United States Supreme Court has emphasized time and time again that the standard for obtaining relief is designed to be difficult, it is not insurmountable.  See e.g., Harrington v. Richter, 562 U.S. 86, 786 (2011).  Petitioner has demonstrated that he is entitled to relief even under the AEDPA's onerous standard.

Accordingly, IT IS HEREBY ORDERED that the Clerk of Court terminate the April 2, 2018 Findings and Recommendations (ECF No. 99) as they are superseded by the findings and recommendations herein.

IT IS FURTHER RECOMMENDED that petitioner's second amended habeas corpus application be granted on petitioner's claim his trial attorney was ineffective for failing to investigate and present his mental health history as a defense to the attempted premeditated murder charge.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to

/////

/////

/////

/////

/////

/////

/////

appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).  In light of the recommendation that petitioner be granted relief, briefing on a request for a certificate of appealability is unnecessary.  <u>See</u> Rule 11, Federal Rules Governing Section 2254 Cases (stating that the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

Dated:  October 4, 2018

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

12/Chat0264.supersedingf&r.docx